Judge Settle

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>v.<br>STEPHEN M. KELLY,<br>SUSAN S. CRANE,<br>WILLIAM J. BICHSEL<br>ANNE MONTGOMERY, and<br>LYNNE T. GREENWALD,<br>Defendants. | NO. CR10-5586BHS<br><br>GOVERNMENT'S TRIAL BRIEF |

The United States of America, by and through Jenny A. Durkan, United States Attorney for the Western District of Washington, and Arlen R. Storm and Brian D. Werner, Assistant United States Attorneys for said District, hereby submits this trial brief.

## I. FACTS

On May 15, 2006, and January 15, 2007, the United States Navy issued Barment Letters to defendants Lynne "Linda" Greenwald and William Bichsel, respectively, due to their unauthorized entry onto Naval Base Kitsap-Bangor (hereinafter Bangor Naval Base) during protests of nuclear weapons. The Barment Letters they received permanently prohibited Greenwald and Bichsel from entering Bangor Naval Base.

Under the cover of darkness, during the early morning hours of November 2, 2009, Greenwald and Bichsel, along with defendants Stephen Kelly, Susan Crane and Anne Montgomery, donned dark clothing and approached the chain-link fence surrounding the exterior perimeter of Bangor Naval Base. There, only feet away from a posted sign that

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

warned that access onto the base was prohibited, the defendants used bolt cutters to cut open a hole in the fence. Upon entering the base through this hole, the defendants carefully wired the fence back together, and proceeded to walk in a northerly direction.

At approximately 4:45 a.m., the defendants, who had overshot their intended destination, were spotted near the north end of the base by two civilians who worked in the area. Believing that the defendants would be apprehended by marines who were patrolling the area, they did not report the defendants to the authorities.

The defendants were not apprehended, however. By approximately 6:30 a.m., they had located their targeted destination, the Main Limited Area ("MLA") of the Strategic Weapons Facility-Pacific ("SWF-Pac"). Only feet from a sign warning that access to the MLA was prohibited and that lethal force may be used upon intruders, the defendants used their bolt cutters to cut through two fences and an alarm system surrounding the MLA. They then entered the MLA.

Military personnel responding to the announcement of the MLA alarm found the defendants inside the MLA displaying a banner denouncing nuclear weapons ("Disarm Now Plowshares: Trident: Illegal and Immoral") and performing the ceremonial act of sprinkling a red liquid on the ground. Upon training their weapons on the defendants, the military personnel who initially responded waited for back up personnel to arrive. Upon arrival, these back-up personnel ordered the defendants to the ground, placed sand bags over their heads so that they could not view any more of this limited access area, and ultimately carried the defendants from the area through the holes the defendants had cut in the fences.

Upon removing them from the MLA, military personnel transported the defendants to the Naval Criminal Investigative Service ("NCIS") office. There, they were processed and interviewed by NCIS and FBI agents and issued Barment Letters.

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

In order to repair the damage the defendants had created to the Navy's fences and alarm system, the Navy called upon two companies with which it contracts, FGS and EJB. Those companies were required to spend more than $6,000 in labor and materials in doing so.

## II. STATEMENT OF PROCEDURE

On September 2, 2010, a Federal Grand Jury for the Western District of Washington returned an Indictment charging the defendants with (1) conspiracy, in violation of Title 18, United States Code, Section 371; (2) trespassing on Naval Base Kitsap-Bangor, a United States Naval installation, in violation of Title 18, United States Code, Section 1382; (3) destroying property within the special territorial jurisdiction of the United States, in violation of Title 18, United States Code, Section 1363; and (4) injuring property of the United States having a value in excess of $1,000, in violation of Title 18, United States Code, Section 1361. The defendants subsequently appeared for arraignment on October 8, 2010. During the arraignment, after determining that the defendants were entitled to proceed pro se, the Court appointed each defendant separate stand-by counsel and set a trial date of December 7, 2010.

On October 8, 2010, the defendants filed a Motion to Immediately Dismiss Charges, and thereafter, on October 29, 2010, they filed an Expanded Motion to Dismiss Charges Because Government Cannot Prove the Essential Elements of Charges Because the Property Allegedly Damaged Conceals Unlawful Weapons of Mass Destruction. In these motions, the defendants moved the Court to dismiss the charges against them or, in the alternative, for an order to permit them to introduce, at trial, evidence and testimony regarding the application of international law and the necessity defense. On November 22, 2010, the Court, citing applicable case law rejecting the defendants' defenses, issued an Order denying the defendants' motions.

On November 26, 2010, the government moved the Court, *in limine*, for an Order prohibiting the defendants from presenting at trial evidence and argument relating to the interpretation of international law, the necessity defense, and the lethality of the nuclear

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

weapons. During the Pretrial Conference on December 2, 2010, the Court ruled that it would prohibit evidence and argument relating to the interpretation of international law and the necessity defense. The government anticipates that the government's evidence will require approximately two trial days.

III. LEGAL ISSUES

A. Venue

Generally, venue is found in the judicial district where the offense was committed. Fed. R. Crim. P. 18. A continuing offense, however, may be prosecuted in any district in which the offense began, continued, or was completed. 18 U.S.C. § 3237(a). Conspiracy is a continuing offense within the meaning of 18 U.S.C. § 3237(a). *United States v. Rommy*, 506 F.3d 108, 119-20 (2d Cir. 2007).

In the present case, with respect to the conspiracy alleged in Count 1, the evidence will establish that the defendants conspired and committed numerous overt acts in furtherance of the conspiracy in the Western District of Washington, including trespassing onto Bangor Naval Base and destroying property therein. These overt acts also constitute the substantive counts alleged in Counts 2 through 5 of the Indictment. For each of the offenses alleged in the Indictment, therefore, venue is properly found within this District. Fed. R. Crim. P. 18; 18 U.S.C. § 3237(a).

B. Statute of Limitations

Unless otherwise provided, an indictment charging a criminal offense must be returned within five years. 18 U.S.C. § 3282(a). In the present case, the events charged in the Indictment are alleged to have occurred on November 2, 2009, and the indictment was returned September 2, 2010, well within the statute of limitations.

C. Elements

1. Conspiracy

The Indictment consists of five charges. Count 1 charges all five defendants with conspiracy to commit (a) trespass; (b) destruction of property within special territorial jurisdiction of the United States; and (c) injury of property of the United States having a

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

value in excess of $1,000, in violation of 18 U.S.C. § 371. To obtain a conviction for conspiracy, the government must prove the following elements beyond a reasonable doubt: (1) there was an agreement between two or more persons to commit one of the illegal objects charged, (2) the defendants became members of the conspiracy knowing of at least one of its objects, and (3) one of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy. *See* 18 U.S.C. § 371;[1] *United States v. Garza*, 980 F.2d 546, 552 (9th Cir. 1992) (discussing elements of conspiracy); *United States v. Atkinson*, 966 F.2d 1270, 1275 (9th Cir. 1992) (same).

While the government bears the burden of proving beyond a reasonable doubt that an agreement has been made to accomplish an illegal object, the agreement constituting a conspiracy may be inferred from the acts of the parties. *United States v. Ayers*, 924 F.2d 1468, 1482 (9th Cir. 1991). Coordination between defendants is "strong circumstantial evidence of an agreement." *United States v. Hernandez*, 876 F.2d 774, 778 (9th Cir. 1989).

The government need not prove that the defendants accomplished the object of their conspiracy. *United States v. Buckner*, 610 F.2d 570, 573 (9th Cir. 1979). Rather, the government need show only that they committed an overt act in furtherance of it. *Id*. The overt act does not have to be a criminal act, as its only function is to manifest that the conspiracy is at work. *Id*. Accordingly, proof of a single overt act committed by one member of the conspiracy is sufficient. *United States v. Ochoa-Torres*, 626 F.2d 689, 692 (9th Cir. 1980)*; United States v. Pullman*, 187 F.3d 816, 820 (8th Cir. 1999).

---

[1] Title 18, United States Code, Section 371, provides, in pertinent part:

> If two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined not more than $10,000 or imprisoned not more than five years, or both.

18 U.S.C. § 371.

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

In the present case, the defendants' concerted actions demonstrated their agreement to commit trespass and destruction of property. In addition, they committed numerous overt acts in carrying out the conspiracy, including actually trespassing onto Bangor Naval Base and cutting the fence surrounding the base and the fences and alarm system surrounding the MLA.

2. Trespass

Count 2 and 3 charge the defendants with trespassing on Naval Base Kitsap-Bangor, a United States Naval installation, in violation of 18 U.S.C. § 1382.[2] To obtain a conviction for trespass, the government must prove the following elements beyond a reasonable doubt: (1) the defendant entered a military installation; (2)(a) with knowledge that his entry was not authorized; (b) with the intent to commit a crime therein; or (c) after previously having been barred from entering the installation. *See* 18 U.S.C. § 1382;[3] *United States v. Hall*, 742 F.2d 1153 (9th Cir. 1984) (going upon a military base with knowledge that such entry is unauthorized violates the statute); *United States v. Parrilla Bonilla*, 648 F.2d 1373, 1377 (1st Cir. 1981) (same). While an indictment may charge each of these three means of committing the offense in the conjunctive, in order to find the defendants guilty, the jury need find the government proved only one theory beyond a reasonable doubt. *See United States v. Bonanno*, 852 F.2d 434, 440-441 (9th Cir. 1988)

---

[2] With respect to defendants Bichsel and Greenwald, Count 3 charges that the defendants had been previously issued Barment Letters prohibiting them from entering the base, in addition to entering the base knowing their access was prohibited and entering the base for a purpose prohibited by law, that is, and with the intent to commit crimes. Count 2 charges defendants Kelly, Crane, and Montgomery only with the latter two means of committing the offense.

[3] Title 18, United States Code, Section 1382, provides, in relevant part:

> Whoever, within the jurisdiction of the United States, goes upon any . . . naval . . . yard . . . for any purpose prohibited by law or lawful regulation; or
>
> Whoever reenters or is found within any such . . . yard . . . after having been removed therefrom or ordered not to reenter by any officer or person in command or charge thereof
>
> Shall be fined not more than $500 or imprisoned not more than six months, or both.

18 U.S.C. § 1382.

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

(where a statute provides more than one way in which an offense may be committed, all may be alleged in the conjunctive in one count and proof of any one may establish guilt). The government may rely on circumstantial evidence to prove the first of these three means of committing trespass - that a defendant knew that his entry was unauthorized. *See United States v. Brodhead,* 714 F. Supp. 593, 598-99 (D.C. Mass. 1989) (fact that defendants burrowed under a fence in early morning hours, together with their statements that they were consciously disobeying the law, was sufficient to show they knew that their entry was prohibited); *United States v. Cottier*, 759 F.2d 760, 762 (9th Cir. 1985) (evidence sufficient that defendant's entry was unauthorized where the facility was relatively small, it was surrounded by a chain link fence, and signs were posted warning that the facility was a restricted area).

In the present case, the evidence presented at trial will establish that before the defendants cut the fence and entered Bangor Naval Base on November 2, 2009, access to the base had been restricted by regulation. In addition, the evidence will establish that the defendants were well aware of this fact because they cut the fence and entered the base only feet from a sign notifying them that trespassing was prohibited and again cut the fences and entered the MLA only feet from a sign that warned them that military personnel were authorized to use lethal force against intruders. In addition to this direct evidence, the circumstantial evidence also will establish that the defendants were aware that access to the base was restricted, given that the base is surrounded by a chain link fence, the defendants entered under the cover of darkness and wore dark clothing, patched the hole they cut in the outer perimeter fence, presumably in order to hide the fact that they had entered the base, and displayed a sign suggesting that their conduct was an act of civil disobedience. Tellingly, moreover, most defendants carried living wills and Bichsel carried a note from his doctor stating that he was not a good candidate for incarceration. Additionally, upon being apprehended, none of the defendants expressed surprise. Finally, the evidence will establish that defendants Greenwald and Bichsel entered the

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

base after being issued Barment Letters during 2006 and 2007, respectively, which permanently prohibited them from again entering the base.

3. Destroying Property Within Special Territorial Jurisdiction

Count 4 charges all five defendants with destroying property within the special territorial jurisdiction of the United States, in violation of 18 U.S.C. § 1363. To obtain a conviction for this offense, the government must prove the following elements beyond a reasonable doubt: a defendant (1) willfully and (2) maliciously injured property (3) within the special maritime and territorial jurisdiction of the United States. *See* 18 U.S.C. § 1361.[2]

"Willfulness" is defined as a voluntary, intentional violation of a known legal duty. *See* Comment for Ninth Circuit Pattern Instruction 5.5 (noting that the Ninth Circuit has approved the following wilfulness instruction: "an act is done wilfully if done voluntarily and intentionally with the purpose of violating a known legal duty"). *See also United States v. Derington*, 229 F.3d 1243, 1248 (9th Cir. 2000) (discussing wilfulness in context of theft and depredation of government property). The government need not prove that the defendant was aware of a specific statute that made his conduct illegal. *Id*. "Malice," is defined as acting wrongly and without lawful justification. *See United States v. Doe*, 136 F.3d 631, 635 (9th Cir. 1998) (malice means "state of mind which actuates conduct injurious to others without lawful reasons, cause or excuse") (quoting *Dean v. State*, 668 P.2d 639, 643 (Wyo. 1983); Ninth Circuit Pattern Instruction 8.1 (defining "malice" as that term is used in 18 U.S.C. § 81, Arson Committed within Special Territorial Jurisdiction of United States).

---

[2] Title 18, United States Code, Section 1363, provides, in relevant part:

> Whoever, within the special maritime and territorial jurisdiction of the United States, wilfully and maliciously destroys or injures . . . real or personal property, or attempts or conspires to do such an act, shall be fined under this title or imprisoned not more than five years, or both.

18 U.S.C. § 1363.

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

In this case, the evidence will establish that the fences the defendants cut were on the special territorial jurisdiction of the United States, that is, on Bangor Naval Base. As discussed above, moreover, the circumstantial evidence will establish that, though various means, the defendants sought to conceal their conduct because they knew that in destroying the property of others, they were violating the law. Finally, the defendants cannot offer any lawful justification or excuse for their wrongful conduct. Indeed, the Court has specifically held that the only explanations that the defendants have offered for their conduct - reliance on international law and the necessity defense - do not to constitute lawful justifications for their conduct. *See United States v. Kabat*, 797 F.2d 580, 590 (8th Cir. 1986) (rejecting Nuremberg defense in context of nuclear protests), and *United States v. Schoon*, 971 F.2d 193, 195 (9th Cir. 1991) (rejecting necessity defense in context of nuclear protests).

4. Injury of Government Property

Finally, Count 5 charges all five defendants with injuring property of the United States having a value in excess of $1,000, in violation of Title 18, United States Code, Section 1361. To obtain a conviction for this offense, the government must prove the following elements beyond a reasonable doubt: a defendant (1) willfully (2) injured property of the United States (3) having a value in excess of $1,000. *See* 18 U.S.C. § 1361;[3] *United States v. Manes*, 420 F. Supp. 1013, 1017 (D. Or. 1976) (discussing elements of injuring government property).

In the present case, as discussed above, the evidence will establish that the defendants acted wilfully. In addition, witnesses will testify that the fences and alarm

---

[3] Title 18, United States Code, Section 1361, provides, in relevant part:

> Whoever willfully injures or commits depredation against any property of the United States, or of any department or agency thereof . . . shall be punished as follows:
>
> If the damage or attempted damage to such property exceeds the sum of $1,000, by fine under this title or imprisonment not more than ten years, or both.

18 U.S.C. § 1361.

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

system the defendants cut were the property of the United States Navy and that the two companies with which the Navy contracted to fix them expended in excess of $6,000 in doing so.

## IV. EVIDENTIARY ISSUES

### A. Public Records

Fed. R. Evid. 803(8) allows admission of public records "setting forth . . . matters observed pursuant to a duty imposed by law as to which matters there was a duty to report . . . ." Fed. R. Evid. 803(8). In addition, records kept by public agencies may be admissible under the business records exception, Fed. R. Evid. 803(6). *United States v. Bowers*, 593 F.2d 376, 380 (10th Cir. 1970). In the present case, the government may seek to offer various records which are both business records of the Navy and public records, including (1) Naval Base Kitsap Instruction 5530.6, prohibiting access onto Naval Base Kitsap-Bangor without authorization; and (2) Certified copies of Barment Letters issued to defendants Greenwald and Bichsel.

### B. Demonstrative Charts

The trial court has discretion under Fed. R. Evid. 611(a) to allow the use of demonstrative charts - which are not admitted into evidence - as testimonial aids. *United States v. Soulard*, 730 F.2d 1292, 1300 (9th Cir. 1984). When using the charts, however, it may be necessary for the court to implement three precautionary measures, that is (1) examine the charts out of the presence of the jury to decide that the contents will be supported by the proof; (2) refuse to admit the charts into evidence; and (3) instruct the jury that although the charts may be published to the jury during testimony, they are presented as a matter of convenience and the jurors should disregard them to the extent the jurors find they are not accurate. *Id.*

In the present case, the companies contracted to fix the fences and alarm system the defendants cut, have prepared demonstrative charts summarizing the expenses they incurred. The government has produced these charts to the defendants in discovery and will not seek to offer them into evidence.

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

C. Impeachment

Evidence that a witness, including a defendant, has been convicted of a crime shall be admitted for impeachment purposes if it involves dishonesty or a false statement. Fed. R. Evid. 609(a)(2). Even if not a crime involving dishonesty or a false statement, a felony conviction is admissible if the Court determines that the probative value of the conviction outweighs its prejudicial effect. Fed. R. Evid. 609(a)(1).

In the present case, some defendants previously have been convicted of trespassing onto government property and destroying government property. These crimes are not crimes of dishonesty, and, therefore, the government will not automatically use them to impeach the defendants should they testify. If the defendants testify that they did not know that access onto Bangor Naval Base was restricted or that destroying government property was a violation of the law, however, the government may seek to impeach them with their prior convictions pursuant to Fed. R. Evid. 609(a)(1).

D. Hearsay

Rule 802 provides that hearsay "is not admissible except as provided by these rules. . . ." Fed. R. Evid. 802. A statement is not hearsay if the statement is offered against a defendant and is the defendant's own statement. Fed. R. Evid. 801(d)(2). When offered by the defendant, however, the statement remains hearsay. *United States v. Burreson*, 643 F.2d 1344, 1349 (9th Cir. 1981).

In the present case, agents located several copies of the following letters and memos, among others, on the defendants and in their possession: (1) letter signed by all five defendants, to Captain Mark Olsen, Commander US Naval Base Kitsap-Bangor, dated November 2, 2009, stating, in part "You are further informed that delay (in disarming) will lead to the prosecution . . . of all . . . personnel responsible for the delay"; (2) memo signed by five defendants, dated November 2, 2009, calling for destruction of nuclear weapons; (3) memo entitled "Nobel Laureates Call for the Abolition of Nuclear Weapons;" and (4) memo regarding "All Souls Day." If the defendants seek to admit these letters and memos the government will object, in that they both constitute hearsay

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

and contain numerous references to the defendants' interpretations of international law, thereby violating the Court's rulings regarding that issue.

V. MOTION *IN LIMINE*

A Witness List that the defendants provided to the government identifies as defense witnesses Michael Honey and Angie Zelter. The Witness Lists states that Honey has written several books on "social change" and that Zelter has written several books on "activism and the law."

In addition, the Witness List identifies Steven Leeper aand David Hall as witnesses. The Witness List states that Leeper will "talk about the spread of nuclear weapons" and that Hall "will speak on the medical effects of nuclear weapons."

The government moves *in limine* to prohibit the testimony of these four witnesses. Evidence which is not relevant is inadmissible. Fed. R. Evid. 402. In addition, a court may properly issue an order *in limine* prohibiting a defendant's arguments to the jury regarding jury nullification. *See United States v. Sloan*, 704 F.Supp. 880, 884 (N. D. Indiana 1989).

In this case - where the defendants face very straight-forward charges relating to trespass and property damage - testimony of witnesses regarding "social change"; "activism"; and the effects of nuclear weapons clearly is irrelevant to any issue before the jury. Given that it is completely irrelevant to the charges levied, this testimony will only tend to obfuscate the issues the jury faces. Accordingly, the government moves to prohibit it pursuant to Rule 402. In addition, the only possible purpose that the

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

defendants could have in offering such testimony is obtaining jury nullification. They should not be allowed to do so. *See also Sloan*, 704 F.Supp. at 884.

## VI.  CONCLUSION

Should any additional issues arise, the government will notify the Court and defendants.

DATED this 3rd day of December, 2010.

                                                Respectfully submitted,

                                                JENNY A. DURKAN
                                                United States Attorney

                                                s/Arlen R. Storm
                                                ARLEN R. STORM
                                                Assistant United States Attorney
                                                U.S. Attorney's Office
                                                WSBA #17330
                                                1201 Pacific Avenue, Suite 700
                                                Tacoma, Washington 98402
                                                Telephone: (253) 428-3800
                                                Facsimile: (253) 428-3826
                                                E-mail: Arlen.Storm@usdoj.gov

                                                s/ Brian D. Werner
                                                BRIAN D. WERNER
                                                Assistant United States Attorney

GOVERNMENT'S TRIAL BRIEF
Kelly, et al (CR10-5586BHS) - 13

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800

**CERTIFICATE OF SERVICE**

I hereby certify that, on December 3, 2010, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system. Notice of this filing will be sent electronically to all counsel of record. The document was also e-mailed to the one defendant not receiving CM/ECF notifications (William J. Bichsel).

s/ Brian D. Werner

United States Attorney
1201 Pacific Avenue, Suite 700
Tacoma, Washington 98402
(253) 428-3800